# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

UNITED STATES OF AMERICA,

v.

LUIS RODRIGUEZ.

No. 04 CR 435 - 2
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

The Government charged Defendant Luis Rodriguez ("Rodriguez" or "Defendant") in a three-count indictment with conspiracy to possess and intent to distribute in excess of 50 grams of substances and mixtures containing cocaine base in the form of "crack cocaine." The indictment also charged Defendant with knowingly and intentionally distributing a controlled substance, to wit, in excess of 5 grams of substances and mixtures containing cocaine base in the form of "crack cocaine." On June 29, 2006, Defendant pled guilty to the superceding indictment.

On March 9 and March 12 of this year, this Court conducted a sentencing hearing. The principal issue was Defendant's argument that the substances he distributed on the dates charged in the indictment were not "crack cocaine." This question is significant because one of the statutes to which Defendant pled guilty prescribes a mandatory minimum sentence of ten years for the manufacture, distribution, or possession with intent to manufacture or distribute 50 grams or more of "cocaine base." 21 U.S.C. § 841(b)(1)(A)(iii). In addition, the federal Sentencing Guidelines call for increased penalties, in the form of heightened base offense levels, for crimes involving "cocaine base." *See* U.S.S.G. § 2D1.1(c). In this Circuit, both for purposes of the enhanced penalties in the Guidelines and the statutes, the term "cocaine base" should be understood as meaning "crack cocaine." *United States v. Booker*, 70 F.3d 488, 489-90, 494 (7th Cir. 1995); *United States v. Edwards*, 397 F.3d 570, 572 (7th Cir. 2005). Moreover, the

guidelines expressly note that "'[c]ocaine base,' for the purposes of this guideline, means 'crack.'" *Id.*, note (D). Accordingly, the Government must prove not just that the substance was cocaine base, but specifically that it was crack cocaine. As the Seventh Circuit teaches: "[a]ll crack is cocaine base, but not all cocaine base is crack." *Edwards*, 397 F.3d at 571. Alternatively, if the substances he distributed are cocaine but not crack cocaine, then no mandatory minimum sentence would apply. *See* 21 U.S.C. § 841(b)(1)(A). Quite obviously, the crack cocaine sentence enhancement would not apply either.

To invoke the crack cocaine enhancement, the government must prove by a preponderance of the evidence that the substance was crack cocaine and not another form of cocaine powder. *See United States v. Mattison*, 153 F.3d 406, 412 (7th Cir. 1998); *United States v. Adams*, 125 F.3d 586, 591-92 (7th Cir. 1997). The Supreme Court's recent decision in *United States v. Booker*, 543 U.S. 220 (2005) had no effect on either the burden of proof or the designated fact finder. *See United States v. Sutton*, 406 F.3d 472, 474 (7th Cir. 2005). "Proof 'by a preponderance of the evidence' requires a showing that some event or fact is more likely than not, i.e., probable or likely rather than just possible." *United States v. Shannon*, 110 F.3d 382, 401 n.10 (7th Cir. 1997) (*citing United States v. Saulter*, 60 F.3d 270, 280 (7th Cir. 1995)). I have wide latitude in the types of evidence I may consider in making factual determinations affecting a sentence. *United States v. Hankton*, 432 F.3d 779, 790 (7th Cir. 2005). I find that the substances Defendant distributed on the dates charged were crack cocaine.

A sentencing judge may find that a drug sample is crack based on a veteran narcotics agent's testimony about the substance's appearance. *See Linton*, 235 F.3d at 329-30; *United States v. Abdul*, 122 F.3d 477, 479-80 (7th Cir. 1997). James McDonald ("McDonald")—an FBI

agent that appeared on behalf of the Government—offered testimony that supports a finding that the substances Defendant distributed were crack. Agent McDonald testified that the substances were consistent with what he has been trained to identify as crack cocaine. He also testified that the substances had a "lumpy texture" that was consistent with what he knew to be crack cocaine. Agent McDonald's description of crack as being lumpy is in line with the Sentencing Guidelines' definition of crack. *See* U.S.S.G. § 2D1.1(c)(D) (describing crack as cocaine base in "lumpy, rocklike form"). Agent McDonald's testimony was perhaps the strongest evidence the Government offered to support its contention that the substances Mr. Gonzalez distributed were crack.

The Government may also meet its burden by showing that witnesses familiar with crack identified the substance as crack. *United States v. Linton*, 235 F.3d 328, 330 (7th Cir. 2000); *accord United States v. Bradley*, 165 F.3d 594, 596 (7th Cir. 1999) ("[T]hose who smoke, buy, or sell this stuff [crack cocaine] are the real experts on what is crack."). In this case, Jose Lozada—Rodriguez's co-defendant—testified at the sentencing hearing that the substances Rodriguez distributed on the dates charged were crack. However, I question Mr. Lozada's credibility and attach very little weight to what he said on the witness stand.

The Government also introduced into evidence audio tapes and transcripts of conversations between Mr. Lozada, a cooperating witness, and Mr. Rodriguez on the dates charged. These tapes and transcripts support the Government's contention that the substances Defendant distributed were crack. On the tapes, Mr. Lozada tells the cooperating witness that Defendant's product is "like butter, it's not white." Then, when asked if Defendant's product was "the yellow type," Mr. Lozada replied: "[i]t's butter, he said butter, it's good shit, butter."

3

Agent McDonald testified that cocaine is "chalky white" in color, whereas crack cocaine is "off white to tan in color." I find that the use of the term "butter" was in reference to the yellowish color of the substance. This is particularly evident since the term "butter" was used in contrast with the term "white."

There were also discussions between Lozada and the cooperating witness about substances getting "stuck to the tube" and "to the pipes." The discussion of tubes and pipes suggests that the substance would be smoked. This, in turn, indicates that it was likely crack cocaine. *See United States v. Brisbane*, 367 F.3d 910, 911 (D.C. Cir. 2004) (explaining that crack cocaine is smokable, but that users cannot smoke powered cocaine "because the temperature at which cocaine hydrochloride evaporates is higher than the temperature at which its active ingredients break down"). The fact that Lozada referred to the substance's yellow color and the fact that he alluded to the substance being smoked both support a finding that the substances Defendant distributed on the dates charged were crack cocaine.

Kenneth Booker ("Booker")—a forensic chemist for the Drug Enforcement Administration ("DEA") that testified for the Government—also supported the Government's case that the substances Mr. Gonzalez distributed were crack. Seventh Circuit law notwithstanding, Mr. Booker testified that—from a chemist's perspective—there is no difference between cocaine base and crack cocaine. He noted that there is no scientific test for crack cocaine "because cocaine base is referred to as cocaine base and not crack." He then confirmed that it was his understanding that "crack cocaine is essentially the same thing as cocaine base."

Though he does not differentiate between cocaine base and crack cocaine, Booker's testimony nevertheless supports the Government's position. First, the Seventh Circuit has upheld

4

a finding that a drug sample was crack even absent a chemical analysis. *United States v. Pigee,* 197 F.3d 879, 890 (7th Cir. 1999); *United States v. Branch*, 195 F.3d 928, 934 (7th Cir. 1999); *see also United States v. Sanapaw*, 366 F.3d 492, 496 (7th Cir. 2004) (chemical analysis not required to prove identity of controlled substance beyond reasonable doubt). In addition, the Seventh Circuit holds that a chemist's determination that a substance is "cocaine base" can support a finding that the substance was "crack cocaine." *See Bradley*, 165 F.3d at 597 ("[A]n experienced DEA agent testified that when an analyzed substance is 'crack,' the chemist's report calls it 'cocaine base.'"); *see also United States v. Earnest*, 185 F.3d 808 (7th Cir. 1999) (affirming a sentence enhancement for crack cocaine even though the expert there did not narrow her analysis to conclude the exact type of cocaine base the substance was). I find that in this case, Booker's testimony does support a finding that the substances Rodriguez distributed were crack.

Defendant makes much of the fact that Booker testified that he did not detect the presence of sodium bicarbonate in the substances. However, the presence of sodium bicarbonate its not necessarily required in order to find that a substance is "crack cocaine." *See* U.S.S.G. § 2D1.1(c)(D) (describing crack as "*usually* prepared by processing cocaine hydrochloride and sodium bicarbonate) (emphasis added); *see also United States v. Waters*, 313 F.3d 151, 153 (3d Cir. 2002) ("[I]t is *not* necessary for the government to show that a substance contains sodium bicarbonate in order to demonstrate by a preponderance of the evidence that the drugs in question are crack cocaine.") (emphasis in original); *Abdul*, 122 F.3d at 479 ("If courts were to disregard the qualifying term 'usually,' crack dealers could avoid the penalties for distribution of crack by merely finding some substitute for baking soda in production, or by crushing the rocks so that the

final product resembles powder."); *United States v. Bryant*, 420 F.Supp.2d 873, 875 (N.D. Ill. 2006) (holding that the absence of sodium bicarbonate does not necessarily mean that substance is not crack). Furthermore, Booker himself testified lucidly that the absence of sodium bicarbonate in the substance he tested did not necessarily mean that sodium bicarbonate was not used in production. He explained that "[i]f sodium bicarbonate was used and they used the prefect mixture, then there would be no sodium bicarbonate left over." He also testified that he only finds sodium bicarbonate or other similar bases in "30, maybe 40 percent" of the samples of cocaine base that he tests at the DEA lab. In short, the fact that no sodium bicarbonate was found in the substance Defendant distributed is not enough to overcome the other evidence the Government offered in support of its contention that the substances at issue here were crack.

I find that the substances Defendant distributed on the dates charged were crack cocaine. Accordingly, the mandatory minimums in 21 U.S.C. § 841(b)(1)(A)(iii) apply, as do the enhanced punishments in U.S.S.G. § 2D1.1(c). The hearing will recommence on April 17, 2007 so that I may impose sentence upon Defendant.

ENTER:

James B. Zagel
United States District Judge

DATE: April 2, 2007